```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
 2                    NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,)
                              )
 4       vs.                  )   CRIMINAL CASE NO. GLR-18-0172
                              )
 5   KAMAL DORCHY,            )      EXCERPT OF PROCEEDINGS
        Defendant.            )
 6   _____)

 7
                        Friday, April 26, 2019
 8                         Courtroom 7A
                        Baltimore, Maryland
 9
                          MOTIONS HEARING
10

11   BEFORE:   THE HONORABLE GEORGE LEVI RUSSELL, III, Judge

12


13


14   For the Plaintiff:

15   Ayn Ducao, Esquire
     Jeffrey Izant, Esquire
16   Assistant United States Attorneys

17   For the Defendant:

18   David Walsh-Little, Esquire
     Shari Derrow, Esquire
19
     Also Present:
20
     Kim Whalen, Paralegal
21   _____

22                       Reported by:

23               Nadine M. Gazic, RMR, CRR
                Federal Official Court Reporter
24            101 W. Lombard Street, 4th Floor
                Baltimore, Maryland  21201
25                    410-962-4753
```

```
 1                T A B L E   O F   C O N T E N T S
 2     WITNESS:              DIRECT    CROSS     REDIRECT    RECROSS
 3     Chad Zirk
 4         By Mr. Izant:       3                   63
 5         By Mr. Walsh-Little:         40
 6     Ronald Baker
 7         By Mr. Izant:      69
 8
 9                                                           PAGE
10     Judge's Ruling:                                        91
```

1   **transcript were held on the record.)**

2   **THE COURT:** Okay, the Court has heard a day-long

3   testimony on an issue on whether or not the GPS tracking

4   device on a vehicle associated with the defendant was lawfully

5   attached. The Court examined at the outset the face of the

6   warrant itself and determined that the face of the warrant and

7   order did not expressly authorize the trespass onto private

8   property for the purposes of the installation.

9   Second, the Court found that the request to go onto

10  private property, although contained within the affidavit, the

11  affidavit itself and the request within the affidavit did not

12  constitute a court order authorizing going onto private

13  proper. Indeed, any incorporation of the application and

14  affidavit was solely for the basis of establishing probable

15  cause to justify the installation and monitoring in the first

16  place.

17  The Court next addressed the question as to whether

18  or not the intrusion or the trespass would otherwise

19  constitute a search for the purposes of evoking constitutional

20  protection. The central idea regarding that concept and

21  answer revolves around an analysis of where the GPS tracking

22  device was actually installed and how the officers ended up

23  getting onto the property to install it. There's no dispute

24  that the purpose of the GPS tracker and the presence on the

25  private property was for the purpose of obtaining information.

1    So the only other element that was necessary to be found in
2    order for there to be a search is if indeed the law
3    enforcement officers encroached upon an area affording
4    constitutional protection in this case.
5            I took testimony of Mr. Dorchy's father, as well as
6    heard testimony of the officer and concluded that indeed based
7    upon all of the factors, including the other officer's
8    testimony, that the GPS device was installed within the
9    curtilage and also that the officers encroached upon the
10   curtilage for the purposes of the installation.
11           The next circumstance in having found that, I
12   determined that the warrant in this case was an unlawful
13   warrant or an illegal authorization for the installation of
14   the GPS tracking device.
15           The next phase of this case that I needed to turn to
16   is whether or not there was an exercise of good faith pursuant
17   to Leon that would allow an otherwise illegal warrant and the
18   fruits of that illegal warrant to not be suppressed.  Counsel
19   has argued that the warrant itself was not so facially
20   deficient that the place to be searched or the things to be
21   seized that the executing officer cannot reasonably presume it
22   to be valid.  As the chief reason for this, promoting this
23   argument against the invalidity of the warrant is that there
24   has apparently been a long history and a practice in Howard
25   County of officers believing that they have a right to go onto

1       private property even though there's no express provision

2       within the authorization, namely there wasn't a fourth bullet

3       point on the second page of the warrant allowing for entry or

4       an amendment to the first allowing entry onto private property

5       for the purposes of installation.

6              However, the testimony also reveals that there seems

7       to be some significant confusion as to what constitutes

8       curtilage and what does not constitute curtilage for the

9       purpose of getting on order to trespass on individual

10      property.  Having found that the warrant itself is clear and

11      this Court having reviewed this warrant does find that the

12      plain reading of the language is facially deficient.  And

13      while there's a long history of or since 2007 a history of at

14      least according to these two officers, as well as the

15      Detective Wintjen that she relied upon the representations of

16      others to determine whether or not the order incorporated not

17      only a request, but also approval to trespass on private

18      property, I find that it would not be reasonable to presume

19      that such an order was valid.  The caselaw is although recent

20      caselaw, has provided some clarity, prior caselaw and even

21      older caselaw seems to easily make clear that before you

22      trespass on someone's property to engage in an investigation,

23      you need an order to do so or you need an exception to the

24      warrant requirement to do so and that is truly sort of basic

25      black letter law here.  And there's no question that the

1   installation of a GPS device would be considered a seizure and
2   has been recognized as such and the need for a warrant itself
3   has been readily recognized.
4              So I respectfully decline to adopt the Government's
5   position in this case.  And this case did, in fact, present
6   and has and continues to present some significant challenges
7   regarding the way law enforcement does business in some of
8   these counties.  And that gives the Court a great deal of
9   pause.
10             So with that, I know that there are several
11  consequences that are going to take place as a result of this
12  order.  And this decision that I ended up making, I hope to
13  revisit it on the 9th.  Counsel can respectfully agree or
14  disagree with the Court's ruling on this, but to the extent
15  that the parties can come to an understanding that based upon
16  Judge Russell's absolutely correct ruling or completely
17  erroneous ruling, that but for the GPS tracking device, this
18  would not have been discovered.  Or but for the GPS tracking
19  information, this would not have been discovered.
20             I understand that there's some disagreement
21  regarding the witnesses that were in the Days Inn.  I'm not
22  telegraphing anything, but my preliminary thoughts on that
23  would be to the extent that these individuals within the rooms
24  had already been previously identified, then I would not
25  likely -- I would hear argument on it.  I'm going to hear

1  everything on it, but my thoughts, my initial thoughts on that
2  were that they would still be able to testify.  And that their
3  testimony wouldn't be suppressed.  However, the attenuation
4  doctrine related to the arrest and the search and the
5  subsequent partial confession by Mr. Dorchy, it's a little bit
6  closer of a call.  But again, I'm reserving judgment on that.
7  But I have looked and done sort of a preliminary analysis of
8  the elements and I'm not going to telegraph a conclusion that
9  I would reach.
10          And then the subsequent sort of tumbling of the
11 dominos related to items seized within the car or in the Days
12 Inn, the parties can sort of sort out for themselves and even
13 present to me even jointly in a two-page letter like here's
14 where I think we are and we propose to provide this testimony
15 or that testimony and we expect it to last a certain period of
16 time.  And if you don't mind, maybe we can do that in a week?
17 Is that too imposing?
18          **MR. WALSH-LITTLE:**  The letter, Your Honor?
19          **THE COURT:**  Right.
20          **MR. WALSH-LITTLE:**  We can definitely do that.
21          **THE COURT:**  Because I think I've been fully briefed
22 on this case.
23          **MR. WALSH-LITTLE:**  Yes, Your Honor.
24          **THE COURT:**  And I think I've got -- I think I'm
25 getting my arms wrapped around it.  So a letter giving me a

1    proposal on how we should most efficiently handle the 9th
2    would be very helpful.  And then we can set up another date
3    for some other matters.  And in the event that for some reason
4    there's a resolution of this case prior to that or some
5    understanding, we can always put off the motions hearing date
6    to another day.  Because luckily, I had a big case fall out so
7    I've got a few days during the summer that I might be able to
8    enjoy myself.
9            So is there anything else we can productively handle
10   before we conclude, Ms. Ducao?
11           **MR. WALSH-LITTLE:**  Not from the defense, Your Honor.
12           **THE COURT:**  Ms. Ducao?  Ms. Ducao?
13           **MS. DUCAO:**  No, Your Honor.
14           **THE COURT:**  All right, Mr. Izant, thank you very
15   much.  I think this is your first major extensive argument
16   that we've had with one another, correct?
17           **MR. IZANT:**  That's correct, Your Honor.
18           **THE COURT:**  I think you did a great job and I
19   appreciate it.
20           **MR. IZANT:**  Thank you.
21           **THE COURT:**  You're welcome.  Thank you.
22           **(Proceeding concluded at 3:38 p.m.)**
23
24
25

**CERTIFICATE OF OFFICIAL REPORTER**

I, Nadine M. Gazic, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this <u>3rd</u> day of <u>May, 2019</u>.

*Nadine Gazic*

NADINE M. GAZIC, RMR, CRR

FEDERAL OFFICIAL COURT REPORTER