IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. GLR-18-0172 |
| | * | |
| KAMAL DORCHY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*\*

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR RELEASE**

Now comes the United States of America by and through its attorneys, Robert K. Hur, United States Attorney for the District of Maryland, and Ayn B. Ducao and Jeffrey J. Izant, Assistant United States Attorneys, and responds in opposition to the Defendant's motion for pretrial release. *See* ECF No. 176. As discussed further below, the Government opposes the Defendant's pretrial release primarily on the grounds that the Defendant poses a clear and present danger to the community, in particular to the victims in this case. Firstly, this is a case in which the Government is entitled to a presumption in favor of detention under 18 USC § 3142(e)(2). Secondly, and most importantly, the Defendant's underlying conduct in the charged case and his conduct while incarcerated pending trial, which has included attempts to harass and intimidate the victims, demonstrate that the Defendant poses a danger. As such, pretrial release of this Defendant is not appropriate and the Defendant's motion should be denied.[1]

---

[1] The Defendant begins his motion by noting that he has been detained for 871 days. The Government, however, was not the cause of any delays in this case. The trial date has been postponed at least twice: first, due to the retirement of the prior District Court judge assigned to the case; and second, due to the Defendant essentially "firing" the Office of the Federal Public Defender, which previously represented the Defendant. Indeed, it had been the Government's hope that the Defendant's trial would have occurred well before the date of this filing.

1

I.       **PROCEDURAL HISTORY**

On March 28, 2018, the Grand Jury for the United States District Court for the District of Maryland returned an Indictment charging the Defendant Kamal Dorchy with sex trafficking, production of child pornography, and possession of child pornography, in violation of 18 U.S.C. §§ 1591(a), 2251(a), and 2252A(a)(5)(B), respectively.  The Defendant had his initial appearance and arraignment on the Indictment on March 30, 2018.  Count One charges the Defendant with sex trafficking of "Victim 1" (an adult victim) by force, fraud or coercion, in violation of 18 U.S.C. § 1591(a).  Count Two charges the Defendant with sex trafficking of a minor victim, "Victim 2," also in violation of 18 U.S.C. § 1591(a).  Counts Three through Six each charge the Defendant with production of child pornography involving the minor victim, "Victim 2," in violation of 18 U.S.C. § 2251(a).  Count Seven charges the Defendant with possession of child pornography involving the minor victim, "Victim 2," in violation of 18 U.S.C. § 2252A(a)(5)(B).  The indictment also contains a forfeiture allegation.

Pretrial litigation in this case has been extensive and is, in fact, ongoing.  But the Government does not believe that the Defendant has accurately characterized the posture of pretrial litigation in his motion for release.  To be clear, the Court *has* ruled that the vehicle tracking device order obtained by the Howard County Police Department did not incorporate the request to install the device on private property, that installation of the device was on curtilage and thus required a warrant authorizing entry onto the curtilage, and that the Howard County Police Department was not entitled to rely on the tracking order in good faith, and, consequently, has ordered that certain evidence be suppressed as "fruit."  The Court did not, however, suppress other evidence as "fruit," including statements by the Defendant after his arrest.  *See* joint status letter filed by counsel for the parties at ECF No. 127 at 1-2.

Most strikingly, the Defendant is incorrect that the Court had "suppressed all physical evidence and testimony from three female witnesses located at the College Park Days Inn on the same day." ECF No. 176 at 2. Rather, the Court has permitted further briefing from the Government as to whether the Court's suppression order should extend to (a) the three phones belonging to the three victims/witnesses found in the Days Inn rooms and (b) the trial testimony of these victims/witnesses, and permitted further briefing from the Defendant on whether items obtained from certain other search warrants related to social media accounts and the search of 11708 Ellington Drive, Beltsville, Maryland were "fruit" of the illegally placed GPS tracking device and therefore should be suppressed. *See* ECF No. 127 at 2. Further briefs from counsel for the parties have been filed at ECF Nos. 134, 135, 137, 141, 142, 146, 148 and 152. This litigation has not yet been resolved; the Office of the Federal Public Defender, which had previously represented the Defendant and had filed briefs on his behalf, sought an attorney inquiry hearing shortly before the pretrial motions hearing was scheduled to occur, and the Office of the Federal Public Defender was ultimately excused from representing the Defendant.

## II. ARGUMENT

Pursuant to 18 U.S.C. § 3142(e)(1), a judicial officer, after a hearing, shall order a defendant's pretrial detention if the judicial officer determines that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of any other person and the community. Thus, the focus of the inquiry under § 3142(e)(1) is not—as the Defendant suggests—the character or weight of the Government's evidence. Rather, the inquiry is focused on whether the Defendant poses a danger to other persons or the community, or a risk of failing to

appear in Court. Here, the Defendant most certainly poses a danger to other persons and the community—particularly, his victims. Accordingly, he should continue to be detained.[2]

### A. The Government is entitled to a presumption in favor of detention under Section 3142(e)(2).

As noted above, the Defendant is charged by Indictment with one count of sex trafficking by force, fraud or coercion, in violation of 18 U.S.C. § 1591(a); one count of sex trafficking of a minor victim, in violation of 18 U.S.C. § 1591(a); four counts of production of child pornography, in violation of 18 U.S.C. § 2251(a); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Thus, under 18 U.S.C. §§ 3142(e)(2) and (f)(1), the Government is entitled to a presumption in favor of detention for *every* count for which the Defendant is charged. Moreover, even if the Government's evidence against the Defendant "were practically weightless" after the Court's suppression decisions as the Defendant contends—a point the Government certainly does not agree with and does not concede—the Court's suppression decisions *do not* implicate Count One, charging sex trafficking by force, fraud or coercion, of Victim 1, as Victim 1's report to law enforcement predates the Howard County Police Department's use of a vehicle tracker which the Court found to be unlawful.

### B. The Defendant's underlying conduct in the charged case and his conduct while on pretrial detention of attempting to intimidate and harass the victims mandates pretrial detention.

#### 1. *Underlying conduct in the charged case*

As detailed in various Howard County Police Department reports and affidavits, Victim 1 gave law enforcement the following information about the Defendant: (1) Victim 1 had met the Defendant nine months ago; (2) the Defendant became Victim 1's pimp and took 50% of the

---

[2] While the Government's written opposition will focus on the Defendant's danger to other others, the Government also believes that the Defendant poses a risk of nonappearance and will so contend at the currently scheduled December 23, 2019 detention hearing.

money earned from prostitution dates from Victim 1 and the other victims; (3) the Defendant posted ads on Backpage.com; (4) the Defendant picked the names for the victims, including "Truth", "Priceless", "Ariel" and others; (5) the Defendant had been a pimp for 5 years; (6) the Defendant had a juvenile victim within the last three months; (7) Victim 1 had numerous prostitution dates in Howard County at the Defendant's direction; (8) the Defendant paid for hotels using the name Kamal Goodwin; (9) the Defendant would photograph his victims for their prostitution ads; (10) the Defendant typically stayed in hotels/motels or with his mother; and (11) the Defendant told Victim 1 that he got into an argument with his mother because he was posting Backpage.com ads for prostitution for his victims from a computer in her residence. Moreover, Victim 1 has also advised law enforcement that: (1) the Defendant hit Victim 1 at least three times, including *while she was pregnant* at two and one-half months and four months; (2) the Defendant only let Victim 1 get three hours of sleep and required her to "work" commercial sex dates for the rest of the night; and (3) the Defendant showed Victim 1 a gun several times.

Images of child pornography of Victim 2, the minor victim, were found on at least one of the Defendant's devices. Victim 2 further confirmed to law enforcement that the Defendant would film her. Victim 2 also stated that the Defendant showed her a gun; the Defendant admitted to Victim 2 about pulling a gun on a friend of Victim 2; and advised that the Defendant spoke about assaulting Victim 1 in front of Victim 1's children. Victim 2 also described not being able to do prostitution dates sober, due to the nature of what she was doing.

### 2. *Defendant's attempt to harass the victims even while the Defendant has been incarcerated pretrial*

While the Defendant has been in pretrial detention in this case, in late September and early October 2018, the Defendant organized a plan to produce a video of the unredacted discovery materials, publish the video on the internet, and disseminate hyperlinks to the video on various

social media websites, including Facebook and Instagram, all with the goal of harassing and intimidating Victim 1 and Victim 2. *See* Government's motion for an emergency protective order filed under seal at ECF No. 66 and attached hereto as Exhibit A.[3]

The Defendant came into possession of unredacted copies of discovery materials, including unredacted copies of police reports that refer to Victims 1 and 2 by name, and a photograph of Victim 1's Maryland driver's license, which includes Victim 1's photograph, address, and date of birth, among other information, and provided copies of these materials to a number of individuals outside his defense team with the stated goal of publicizing the information. Through a number of recorded phone calls the Defendant has placed from the Chesapeake Detention Facility ("CDF") between September 29 and October 4, 2018, the Defendant discussed with others his plan to produce a video of the unredacted discovery materials, publish the video on the internet, and disseminate hyperlinks to the video on various social media websites, including Facebook and Instagram. During the course of four recorded calls the Defendant made from CDF on October 3, 2018, he dictated information about various discovery materials over the phone, while the call recipient recorded the Defendant's statements and filmed the documents he was describing (and had earlier provided). In particular, the Defendant's video incorporates a number of police reports containing unredacted information about Victims 1 and 2, the photograph of Victim 1's driver's license, and statements by the Defendant concerning Victims 1 and 2, including their true names. Plainly the Defendant's objective was to harass and intimidate the Government's witnesses in this case. For example, in an October 2, 2018, recorded jail call, the Defendant described his intent "to be destructive." And in one of the October 3 jail call recordings, the Defendant stated that his goal is to "assassinate [Victim 1]'s character."

---

[3] As this filing was originally filed under seal, Exhibit A will be filed under seal.

Because the Defendant was incarcerated, the Defendant recruited two friends and his mother to implement his plan. *See* email containing notes regarding various jail calls compiled by Homeland Security Investigations Special Agent Leah Martinez attached as Exhibit B.[4] The Defendant's own mother discussed with the Defendant that she had the documents for the video and she was attempting to contact the Defendant's friends for help with the video. *See id.* Indeed, on November 2, 2018, when Special Agent Martinez spoke to the two friends of the Defendant that he attempted to recruit for help making and disseminating his video, they both confirmed that the Defendant's mother was the one with the thumb drive containing the video. The Court ultimately granted the Government's motion for a protective order on October 26, 2018. *See* order attached as Exhibit C, which is also filed under seal.

Both Victim 1 and Victim 2 have subsequently expressed concerns about their safety to law enforcement. On November 18, 2018, Victim 2 advised Special Agent Martinez that Victim 2 was told by a friend that Victim 2 "had money on her head," that Victim 2 did not feel safe and thought that the "money on her head" was related to the current prosecution. As recently as late August 2019 and early September 2019, Victim 1 reported receiving threatening messages via Instagram, which indicated that the sender knew where she lived and that she was "close to her death date." Law enforcement were able to view and confirm these Instagram messages, including one message which mentioned Victim 1's history with the Defendant and the fact that the Defendant "locked up been for over a year on some false accusations cause he fucked her . . . ." Law enforcement ended up relocating Victim 1 as a safety precaution.[5]

---

[4] As this exhibit provides identifying information regarding the victims, it is filed under seal.

[5] At this time, law enforcement has not been able to definitely link the Defendant to these Instagram messages. At the same time, law enforcement cannot rule out that the Defendant caused the messages to be sent or knew and had communication with the sender of these Instagram messages. The Government is not willing to presume that such associates of the Defendant are engaging in

### C. The Court's decision regarding suppression resulting from actions of law enforcement do not speak to the Defendant's conduct and character, which is at the heart of the inquiry regarding whether release or detention is appropriate.

The Court's rulings regarding suppression focused on the propriety and lawfulness of law enforcement action. But the question of whether pretrial release or detention is appropriate under 18 U.S.C. § 3142 focuses on the Defendant's character and conduct and, specifically, whether he poses a risk of nonappearance or a danger to other persons and the community. The Court's suppression rulings have, if any, extremely limited bearing on whether the Defendant should be released pending trial. It is his conduct and character that the Court must take into account.

### D. The proposed third party custodian is not appropriate.

The Defendant has proposed only his father as a third party custodian. The Court should not be fooled. Undersigned counsel believes that the Defendant's father and mother live together; indeed, the Defendant's father testified at a pretrial hearing that the Beltsville address is the family home. The Defendant's mother, however, was a knowing and voluntary participant in the Defendant's September and October 2018 plan to distribute a video on social media that would contain highly personal information regarding the victims and was intended to harass and intimidate them. In fact, the Defendant's mother maintained custody of the thumb drive containing the video. And during an October 21, 2018 phone call, the Defendant discussed the video with his father as well. *See* Exhibit B. Given his family's participation in his attempt to intimidate witnesses, it would be inappropriate to release the Defendant to his father or to the family home.

---

conduct that happens to benefit the Defendant without either the express or implied endorsement of the Defendant himself. And the Government is unaware of any effort by the Defendant to discourage this conduct.

### III. <u>**CONCLUSION**</u>

For the reasons set forth above, the Court should deny the Defendant's motion for pretrial release and continue to detain the Defendant pending trial.

                                        Respectfully submitted,

                                        Robert K. Hur
                                        United States Attorney

By: _____/s/_____
              Ayn B. Ducao
              Jeffrey J. Izant
              Assistant United States Attorneys
              36 South Charles Street, Suite 400
              Baltimore, Maryland 21201

Electronically served via ECF filing and electronic mail