

Charles N. Curlett, Jr.
Partner
Admitted in Maryland, New York
and the District of Columbia

25 South Charles Street, 21st Floor
Baltimore, Maryland 21201
(o) 410-685-0008; (m) 917-667-0861
ccurlett@rosenbergmartin.com

May 26, 2020

*Via CM/ECF and E-mail to* MDD_GLRChambers@mdd.uscourts.gov
The Honorable George L. Russell, III
U.S. District Court for the District of Maryland
101 West Lombard Street, Chambers 7A
Baltimore, Maryland 21201

**Re:     United States v. Dorchy, Case No. 1:18-cr-0172-GLR**

Dear Judge Russell:

There is a critical distinction to be drawn in this case between sex trafficking and prostitution. Mr. Dorchy is charged with, and has pled guilty to, conspiracy to commit sex trafficking. He has not been charged with facilitating prostitution. Accordingly, in sentencing Mr. Dorchy, this Court should consider only the evidence as it relates to Victims 1-3, and only to the extent the government can produce reliable evidence beyond that which is contained in the statement of facts to the plea agreement. It would be improper for this Court to consider the broader prostitution scheme – for which there is no evidence of participation of minor victims or of force, fraud or coercion – relating to the women who were equal financial partners in Mr. Dorchy's enterprise.

The government tries to revive the credibility of Victim 1 ("DC") by pointing to areas in which her story was corroborated. Other than the allegation concerning *a bb gun* – which no one ever claims was used to threaten them – the only parts of DC's story that were corroborated are the parts concerning ordinary prostitution. There is no dispute that Mr. Dorchy coordinated prostitution dates for women, and that DC was one of them. Naturally, she has supplied information about things such as advertisements, the phone shop, and the breakdown of proceeds, all of which can be corroborated by other sex workers. But there is no evidence that DC was subjected to *force, fraud and coercion* to perpetuate sex work other than DC herself, which is wholly unreliable.

The Minor Victim testified in the grand jury – in response to a single leading question by the government – that Mr. Dorchy admitted to her that he had previously "beat up" DC in front of DC's kids because she had called the police to a hotel. This is false, and there is no evidence to corroborate it. Indeed, this statement appears nowhere in discovery, including in the police reports and notes of prior interviews with Minor Victim. Surely if it were true, the government would be able to establish the visit by the police to the hotel. The most reliable statement made by Minor Victim was the one she made spontaneously the day she first met with law enforcement: "I don't want you to think he is forcing us to do this."

The nine other women featured in the government's exhibit of various BackPage.com ads are irrelevant to sentencing. These women were involved in prostitution, but there is no evidence that they were involved in sex trafficking.

      Victim 3 is equally unreliable in that she only worked with Mr. Dorchy for a matter of weeks. There is no evidence to corroborate any of her statements concerning coercion. On the contrary, the government's own restitution calculus suggests that Victim 3 stopped working for Mr. Dorchy for a period of time. If true, that suggests she felt free to stop doing that work and chose to resume it. Both would be inconsistent with force, fraud or coercion.

      The government's assertion that no court has found Detective James-Wintjen to be incredible is disingenuous at best. Her fraud on the Court is well documented. This Court has expressly acknowledged on the record that there "are conceded omissions and mistakes that Detective Wintjen made through this entire case." Hearing Tr. 5/9/17 at 57. The Court made that statement as a warning to the government that Detective James-Wintjen's testimony was not going to "carry the day," should the government seek to use it to advance an inevitable discovery argument. For the government to now stand behind Detective James-Wintjen's conduct as truthful and accurate is surprising.

      The defense certainly appreciates the serious nature of sex trafficking of minors. The defense does not suggest that Minor Victim had the legal capacity to consent to sex work. Agency is not the same as legal capacity. That Minor Victim was 17 years old at the time is a *fact*, not an excuse. The Court should consider all circumstances of the offense, and that is one of the circumstances. While the Supreme Court has taken great care to discuss the scientific differences between juveniles and adults, those differences are not without nuance. *See J.D.B. v. North Carolina*, 564 U.S. 261, 280 (2011) ("[A] 7-year-old is not a 13-year-old and neither is an adult."). That Minor Victim was 17 and not 14 is a mitigating factor that gives context to how Mr. Dorchy came to work with Minor Victim.

      Regarding sentencing disparities, the government suggests that looking at cases within this district is inappropriate, and that a nationwide comparison is what the law actually requires. That is wrong. In fact, Judge Messitte recently granted a motion for compassionate release based on sentencing disparities between two co-defendants in the same case. *United States v. Payton*, Crim. No. PJM 06-341 (ECF 109).

      Contrary to the government's assertions, Mr. Dorchy never robbed a bank. He robbed a series of small businesses. Then, his mother drove him to a police station in Hyattsville, Maryland, where he confessed to his crimes. He provided the police with the evidence, and he was prosecuted.

      Finally, the government relies on dicta from U.S. District Court for the Western District of Louisiana: "[T]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." Mr. Dorchy does not ask to be *released*. Nor is Mr. Dorchy at risk for COVID-19 – he tested positive for the virus. Mr. Dorchy simply asks for a sentence that takes into account that the circumstances of his pretrial detention – which has lasted almost four years – have been particularly harsh. That is an appropriate consideration at sentencing.

      Very truly yours,

*[signature]*

Charles N. Curlett, Jr.