IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO.: GLR 18-172 |
| | * | |
| KAMAL DORCHY | * | |
| | * | |

.......oOo.......

### GOVERNMENT'S RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

The United States of America, by and through its attorneys, Erek L. Barron, United States Attorney for the District of Maryland, and Adam K. Ake, Assistant United States Attorney for said District, respectfully submits the following response to the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, as supplemented, filed in the above-captioned case. ECF Nos. 366 and 367. The Defendant's motion is untimely filed and therefore barred under 28 U.S.C. § 2255(f). Although Defendant claims to base his untimely motion on the discovery of new facts, what he presents as such is nothing but a rehash of unfounded allegations of law enforcement dishonesty previously briefed to the Court before he entered his guilty plea. Because such claims do not qualify as newly discovered facts under 28 U.S.C. § 2255(f)(4), the Court must deny his motion as untimely.

### I. BACKGROUND

Defendant's present claim relates to this Court's suppression of evidence obtained by law enforcement subsequent to its installation of a vehicle GPS tracking device on July 27, 2017, that the Court later found had violated the Fourth Amendment (ECF No. 115). On that day in 2017, law enforcement had followed Defendant's vehicle to a Days Inn in College Park, Maryland, and searched two rooms therein, finding three women who the Defendant was trafficking for

1

commercial sex, including one minor (referred to as Victim 2). Following this Court's decision to suppress the fruits of the GPS tracker warrant, it invited briefing from the United States to establish what derivative evidence, such as testimony from the three women or information contained in their phones, might still be admissible under other rules, including the inevitable discovery doctrine.

On June 3, 2019, the government filed a brief with extensive exhibits demonstrating that law enforcement's location of the three women, along with the contents of their cell phones, was inevitable. ECF No. 135. In short, the brief related that, on July 24, 2017, Howard County Detective First Class Kalle James-Wintjen, had encountered a fourth woman (referred to in earlier briefing materials as "Victim 1") whom Defendant was trafficking, after the woman reported that Defendant had stolen her phone and was placing advertisements online for her commercial sex services. Using a law enforcement tool called "Spotlight," which accessed the online ads in real time, Det. James-Wintjen entered the woman's phone number to see what ads listed it, and corroborated the woman's claim that Defendant was posting ads of her on Backpage.com. A Spotlight tool linked those ads of Victim 1 to other ads the Defendant had posted offering the services of other young women. *See* ECF No. 135 at 4.

The government's filing related how Det. James-Wintjen met again on July 25 with Victim 1 and verified that each of the other three women were known to the latter, albeit by street names, and also trafficked by Defendant. The Backpage ads generally posted the women's true cell phone numbers, which, in the case of Victim 2, was subscribed in her real name. *Id*. at 7. This had already occurred before law enforcement encountered the three women on July 27 in College Park.

The government's brief argued that, even had law enforcement not followed Defendant to the hotel in College Park on July 27, discovery of and contact with the three women, including

Victim 2, would have taken place because they were actively searching for the women and had the tools to both contact and identify them. In addition to having their actual cell phone numbers, the pictures posted on Backpage could be submitted to a law enforcement databases, including the Maryland Image Repository System (MIRS), which provided Victim 2's name and additional demographic information. ECF No. 135 at 7-8.

Defendant, in a response filed at ECF No. 244 on January 20, 2021, argued against the Court's consideration of the Government's submissions showing that the Spotlight and image comparison database tools would have inevitably provided law enforcement with the necessary information to find the women, specifically Victim 2. Specifically, Defendant argued that it was "completely speculative as to whether Spotlight would have returned the same results in 2019, when Det. James-Wintjen made the Spotlight Recreation, as it did back in 2017." *Id* at 2.

This issue was before the Court but never decided, because Defendant decided to accept the plea offer extended to him by the government shortly after making the responsive filing. Defendant later represented in his *pro se* brief to the Fourth Circuit that his attorneys advised him that, despite their briefing arguing that the women should not be permitted to testify at his trial because their discovery by law enforcement was tainted by the GPS tracker, the Court was unlikely to preclude their testimony ("My attorney advised me that live witness testimony is different from physical evidence….and anyone police wish to use can testify in a trial even if they were discovered illegally." *United States v. Dorchy*, Case No. 21-4331 (4th Cir. 2021) at ECF No. 28). Defendant waived indictment and pleaded guilty to a Superseding Information charging him with Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1594(c) on February 23, 2021. ECF No. 251.

On May 27, 2021, Defendant appeared before this Court for sentencing, at which time the Court imposed a sentence of imprisonment of 8 years, followed by supervised release for a term of 15 years. ECF Nos. 273 & 275. Defendant noted an appeal to the U.S. Court of Appeals for the Fourth Circuit on June 25, 2021. ECF No. 282.

On September 8, 2021, Defendant's counsel filed an opening brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which challenged the validity of Defendant's guilty plea, the district court's consideration of the sentencing factors under 18 U.S.C. § 3553(a), and the validity of the court's imposition of restriction of access to pornography as one of his conditions of supervised release. *See Dorchy*, Case No. 21-4331 at ECF No. 14. The government, in response, moved to dismiss the appeal based on the appeal waiver contained in Defendant's plea agreement.

On January 24, 2022, the Court of Appeals, in an unpublished *per curiam* opinion, dismissed Defendant's appeals. Defendant had ninety days following that decision to appeal for *certiorari*. See SUP. CT. R. 13.1 & 13.3. The ninety-day period lapsed on April 24, 2022, without such a filing.

## II. DEFENDANT'S MOTION

In Defendant's instant motion, signed October 5, 2023, he argues that an email from a Baltimore County Police officer constitutes newly discovered evidence that would have changed his decision to plead guilty. ECF No. 367. Specifically, he alleges that "New discovery shows that [Spotlight and MIRS] results were one (1) ***fraudulent*** (**Spotlight Human Trafficking tool**) and two (2), not ***physically possible***, the **MIRS (Maryland Image Repository System).**" ECF No. 366 at 3. Defendant's complaint seems to focus on whether or not MIRS would then have had a photo of Victim 2, a 17-year old minor, because he believes MIRS only contains adult criminal mug shots.

4

To substantiate what he claims to be this newly discovered evidence, Defendant included an email from BPD officer Raynard Johnson. ECF No. 366 at 6-7. In that email, Officer Johnson appears to express sympathy for Defendant but, in response to Defendant's request to search databases to see if Victim 2 had been prosecuted as an adult during the relevant period, declines to do so. *Id*. The undersigned contacted Officer Johnson, who related that he works in the Sexual Offender Registration unit for the Baltimore City Police Department and encountered Defendant while the latter was transitioning to a halfway house. Officer Johnson was surprised to hear that his email response, which he intended as a polite rebuff to Defendant's entreaties to abuse his system access privileges to search for information regarding Victim 2, was being submitted as evidence in this matter.

Publicly available information regarding MIRS' repository of photos relates that although MIRS contains approximately 3 million Maryland criminal booking photos, it also contains over 7 million photos from the Maryland Vehicle Administration.[1]

### III.  ARGUMENT

**A.  Summary**

Defendant's present motion is time-barred by 28 U.S.C. § 2255(f) and should be dismissed. Section 2255(f) provides:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1)   the date on which the judgment of conviction becomes final;

---

[1] See CENTER ON PRIVACY & TECHNOLOGY AT GEORGETOWN LAW, "Maryland Department of Public Safety & Correctional Service," *The Perpetual Line-Up | Unregulated Police Face Recognition in America,* available at https://www.perpetuallineup.org/sites/default/files/2016-10/12_MD.pdf, last accessed December 15, 2023. See also ACLU Maryland Testimony for the Senate Judicial Proceedings Committee, January 15, 2020, available at https://mgaleg.maryland.gov/cmte_testimony/2020/jpr/1127_01152020_115626-14.pdf, last accessed December 15, 2023.

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Court, if that right has been newly recognized by the Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Because Defendant's motion was filed more than 12 months after the period for filing for a writ of certiorari following his denied appeal lapsed on April 24, 2022, and the information he bases his present motion on does not constitute facts supporting his claim that could have been discovered through the exercise of due diligence, his motion meets none of § 2255(f)'s exceptions and must be denied.

### **B. Defendant's Assertions Relating to MIRS Are Factually Incorrect and Irrelevant**

Officer Raynard Johnson's email is far too slender a reed on which to base Defendant's claim of new evidence. Nowhere does Officer Johnson's email state, or even suggest, that Victim 2's photograph was not in MIRS or any other law enforcement database in July 2017. At most, all his statement can be read to say is that Johnson doesn't believe that juvenile offenders' photos are uploaded to MIRS. But MIRS also—and indeed primarily—accesses state Motor Vehicle Administration records, so any Maryland resident with a state identification card or drivers license would have a photo in the database. Given that Victim 2 was a Maryland resident and nearly 18 at the time of the encounter, there is no reason to believe that a standard identification photo would not have been in MIRS by that time.

Additionally, while MIRS was one system available to Detective James-Wintjen in July 2017, it was not the only law enforcement database containing photographs for comparison

available at the time. Indeed, during a brief phone call the undersigned had with Detective James-Wintjen on December 20, 2023, she was able to access multiple booking photos of Victim 2 dating back to 2013 and spanning up through 2017 within seconds using the same databases she had access to in 2017. Detective James-Wintjen confirmed that these databases had essentially the same functionality at that time. Defendant's assertion that Victim 2 could not be identified through comparison of her photos that he had posted of her to Backpage with those residing in law enforcement databases regularly consulted by Det. James-Wintjen in July 2017 is meritless.

### C.  As Defendant Presents no Probative New Evidence, His Allegations Fail to Cast Doubt on his Attorneys' Advice to Enter a Guilty Plea

Although Defendant does not expressly frame his motion in terms of ineffectiveness of counsel, the new "evidence" he asserts does nothing to impugn the wisdom of his counsel's advice to plead prior to trial. In the context of a guilty plea, the Supreme Court has interpreted *Strickland*'s prejudice prong to require a convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, (1985).

Critically, as Defendant's purported new evidence does nothing at all to call into question the fact that Spotlight's features allowed Detective James-Wintjen to discover Defendant's posted advertisements of Victim 2 along with her actual cell phone number in the wake of James-Wintjen's first interview with Victim 1 on July 24, 2017, his present motion fails to undermine any of the government's arguments regarding the inevitability of Victim 2's identification and ultimate location during the investigation. Defendant's attorneys recognized this and properly advised him that pleading guilty while there was still some uncertainty to bargain with was in his best interest. Nothing he avers now can reasonably call their legal assessment or effectiveness into question.

## III.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the defendant's motion be denied as untimely without an evidentiary hearing.

                                          Respectfully submitted,

                                          Erek L. Barron
                                          United States Attorney

By:    ___//signed//_____
        Adam K. Ake
        Assistant United States Attorney
        6406 Ivy Lane
        Greenbelt, MD 20770-1249
        301-344-4340

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing was served by first-class mail, postage prepaid, this 22$^d$ day of December 2023, on:

    Kamal Dorchy
    11708 Ellington Drive
    Beltsville, MD 20705

                                              //signed//
                                              Adam K. Ake
                                              Assistant United States Attorney